Lewis v. Kimball.

No. 21,150.

W. T. LEWIS, Revived in the name of MAUDE LEWIS, as Administratrix, etc., *Appellant,* v. T. W. KIMBALL, *Appellee.*

SYLLABUS BY THE COURT.

1. REAL-ESTATE AGENT — *Commissions* — *Compromise and Settlement.* The law favors the compromise and settlement of disputes, and when parties without fraud enter into an agreement settling and adjusting a dispute neither is permitted afterward to deny it.

2. SAME. It having been found that an agreement, based on a good consideration, settling the amount to which the plaintiff was entitled for services rendered towards finding a purchaser for the defendant's land was made without fraud or concealment, it is binding upon the parties, regardless of the merits of the controversy.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed June 8, 1918. Affirmed.

*Howard J. Hodgson,* of Eureka, and *Clifford Sullivan,* of Howard, for the appellant.

*Lew E. Clogston,* and *Robert H. Clogston,* both of Eureka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: W. T. Lewis, a real-estate broker, brought this action against T. W. Kimball, to recover commissions for procuring purchasers for defendant's farm. The judgment was in defendant's favor, and plaintiff appealed. Since the appeal was taken W. T. Lewis has died, and his representative has been substituted.

It appears that in November, 1914, defendant listed his 187-acre farm with plaintiff under an agreement that if he could find a purchaser for $18,700 plaintiff should have $700 as his commission. Shortly afterwards the plaintiff made an arrangement with one Rison, of Wichita, by which he agreed to divide the commission with Rison in case he found a purchaser for the land. In January, 1915, plaintiff brought a prospective purchaser named Rutherford to look at the farm, and on the same day Rison appeared with a man named Norris who talked of exchanging other property for the farm.

Neither of them was able to make an agreement of purchase or exchange with the defendant. Soon afterwards an agent of Rutherford proposed to pay $17,000 for the land in cash, and an agreement was made by the plaintiff that if a sale was made on these terms he would accept $400 as his commission. A new contract of brokerage was therefore made between plaintiff and defendant on that basis. Under an agreement of sale made between Rutherford and defendant on February 17, 1915, the defendant was to prepare and furnish an abstract of title, and Rutherford was to advance $1,000, and the transaction was to be closed, and the balance due was to be paid on or before March 15, 1915, and if payment was not made when due, the $1,000 advanced by Rutherford was to be forfeited. The sale was never completed, as Rutherford failed to pay the balance due, and the $1,000 was forfeited to the defendant. There was some controversy between the parties as to whether the plaintiff was entitled to a commission for bringing Rutherford and the defendant together, and defendant, while insisting that there was no liability, did pay plaintiff $25 towards his services and expenses in the transaction. Later, and on August 5, 1915, the plaintiff brought an action against the defendant, claiming that $375 was due to him on the transaction. In the meantime some efforts were made by Rison to induce Norris to purchase the land, and negotiations were had between him and the defendant, but Rison stated in his testimony that he had told the defendant he would not expect a commission if a deal was made between him and Norris. After plaintiff's action for commission had been pending for some time conferences were had between the parties about a settlement of their differences, with the result that an agreement was reached and a stipulation was drawn up by defendant's attorney, by which plaintiff, in consideration of $125 paid by the defendant, agreed that it should constitute "a full and complete settlement of all matters and things between said parties and said sum pays said plaintiff W. T. Lewis in full for all services heretofore rendered as a real-estate agent in the listing and attempting the sale of the 187-acre farm of the defendant T. W. Kimball in Salt Springs township, Greenwood county, and state of Kansas, including the commission claimed in said above entitled

action." There was a further agreement that the action should be dismissed and the costs of the same paid by the defendant.

Shortly afterwards the defendant made an exchange and sale of properties with Norris, and the plaintiff then went back into court and filed a supplemental petition alleging that he was induced to sign the stipulation by the fraudulent representations of the defendant and his attorney, and that the only settlement made was for his services in the Rutherford transaction, and he also alleged fraud in concealing from him the fact that defendant had negotiated a sale or trade with Norris. The validity of the stipulation was a vital issue in the trial which followed, and, while the jury returned a verdict awarding the plaintiff $125 on the first count and $455 on the second count, the other special findings negatived the claim that there was fraud in the execution of the compromise agreement. The jury found that the defendant made no fraudulent representations to the plaintiff when the settlement was made, and another finding acquitted the defendant's attorney of the charge that he had made false and fraudulent statements to plaintiff at the time of making the agreement. They also found that in the making of the agreement neither the defendant nor his attorney had fraudulently withheld any material fact regarding the agreement. These findings determine the validity of the compromise agreement and amount to a practical disposition of the case. The agreement was made after hostilities between the parties had begun and after their dispute had culminated in a lawsuit. They were dealing at arm's length and their agreement, found to be without misrepresentation or fraud, is specific and complete. The law favors the compromise and settlement of disputes, and when parties in good faith enter into an agreement based on good consideration neither is permitted afterward to deny it. (*Finley v. Funk,* 35 Kan. 668, 12 Pac. 15; *Minor v. Fike,* 77 Kan. 806, 93 Pac. 264; *Kiler v. Wohletz,* 79 Kan. 716, 101 Pac. 474.) There was a real dispute between the parties herein. It was settled by an agreement which specifically covers all the services rendered by the plaintiff in his attempts to find a purchaser for the defendant's land, including both the Rutherford and Norris transactions. Having been found to be valid and

complete, the agreement must be sustained, regardless of the merits of the controversy between the parties. Whatever the plaintiff might have recovered if no compromise had been made, it is clear that when the settlement was made and the stipulated sum paid and accepted, the defendant was then at liberty to negotiate a sale or exchange with Norris or any one else without liability to plaintiff.

The determination that the agreement is valid and binding upon the parties renders a number of the objections argued by the appellant immaterial. We have examined all the assignments of error, including those on the refusal of the court to submit special questions, as well as upon the instructions given and refused, and find nothing substantial in them.

The judgment is affirmed.