No. 22,479.

MARTIN SCHNACK et al., *Appellees*, v. THE CITY OF LARNED et al. (A. M. MOFFET, as Executor, etc., *Appellant*).

SYLLABUS BY THE COURT.

1. WILL—*Executors—No Interest in Residuary Estate.* The provisions of a will examined, and *held*, that the executors of the will have no concern with the residuary estate devised therein to a city for a public purpose.

2. SAME—*Residuary Estate—Devised to City for Public Purposes—Title in City.* Where the entire annual income of a residuary estate is devised in perpetuity to a city for a public purpose, the legal effect of such a devise operates as a grant to the city of the entire estate, with limitation only as to its use.

3. SAME—*Parties Interested in Residuary Estate—Compromise.* Where there is no issue of fraud or bad faith, an executor of a will who has a personal interest as heir in the residuary estate, and who has no official concern with the residuary estate as executor, may lawfully join with other heirs in a compromise settlement with another claimant concerning the residuary estate.

4. SAME—*Residuary Estate—Devised to City—Power of City to Compromise Contest.* Where a city is named as the beneficiary of a residuary estate, and its right thereto is subjected to a contest by heirs of the testator, and where it appears that there may be reasonable grounds upon which to base the contest by the heirs, and no bad faith is apparent, the city may lawfully compromise its claim to the residuary estate, especially when the compromise is to become effective only after it is submitted to and approved by the court.

5. SAME—*Contest—State Has No Interest in Compromise.* Ordinarily the state's law officer, its attorney-general or county attorney, has no special official concern in a city's compromise settlement of its claim to a residuary estate devised to the city for a public purpose.

Appeal from Pawnee district court; ALBERT S. FOULKS, judge. Opinion filed January 10, 1920. Affirmed.

*H. S. Rogers,* of Larned, *Elrick C. Cole,* and *William Osmond,* both of Great Bend, for the appellant.

*W. H. Vernon, jr.,* of Larned, *Chester I. Long, Austin M. Cowan, James G. Martin,* and *Claude I. Depuy,* all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action by certain heirs at law of the late Peter Schnack, of Pawnee county, to set aside the residuary clause of Peter's will on account of undue influence. The city of Larned is the beneficiary of the residuary clause. The plaintiffs and the city have effected a compromise, subject to the approval of the trial court, and the legality of that compromise and of the right of the trial court to approve or reject it are the questions involved in this appeal.

The plaintiff's petition alleged that at the time of making his will Peter Schnack was 76 years of age, in his dotage, infirm, decrepit, weak in both body and mind, and incapable of comprehending the terms and nature of the residuary clause, and that it was incorporated in the will because of undue influence of divers persons, etc. The other clauses of the will, which are not assailed, dispose of considerable property, and provide a number of substantial legacies to certain of his kindred by blood and marriage. Three executors are named by the will. They are directed to reserve and invest enough money out of his estate to produce an annual income of $15 to be used for improving and maintaining the family lot in Larned cemetery; and the executors are authorized to sell enough of Peter's real estate to pay specific legacies.

The residuary clause of the will which the plaintiffs attacked in this action reads:

"Provided further, that the surplus or residue of my estate after the payment of the specific bequests hereinbefore mentioned and the cost and expenses of administration, shall be invested and kept invested in good bonds, such as could be accepted by the State as an investment for school funds or in first mortgages on improved farm lands in this State, no loan to exceed forty per cent (40%) of the actual cash value of the land. The income from these investments shall be used by the City of Larned or its Park Commissioner for the purpose of maintaining a public park, which shall bear my name, to be located in or near the city of Larned, Kansas, and for no other purposes. No part of this income shall be used under any circumstances for the maintenance of the Edwards Park or used on lands where it is now located. I prefer that the Island between the Pawnee and the Arkansas River, which is now owned by the City, be used."

The answer of the city of Larned joined issues on plaintiffs'

petition.  Two of the executors did not answer; and the third, A. M. Moffet, who is the appellant here, filed a general denial. Thereafter, the plaintiffs and the city of Larned effected a compromise and settlement of the controversy, subject to the approval of the trial court.  Charley Schnack, who had been named as one of the executors, joined in this compromise with the plaintiffs, his coheirs-at-law.  This compromise provided that the city of Larned should sell and assign all its interest in the property bequeathed by the residuary clause of Schnack's will for $25,000 in cash and certain lands and town lots in Larned which were to be devoted to park purposes by the city. A supplemental petition alleging this proposed settlement and setting up a copy of it, and praying for the trial court's approval thereof, was filed in the action.  The defendant executor, Moffet, demurred to the supplemental petition.  The trial court overruled this demurrer, and, without awaiting the trial court's approval or disapproval of the settlement, the defendant, Moffet, appeals.

Moffet contends that the residuary clause confers no title on the city of Larned, but that such title is in himself and his coexecutors; and that the compact between the city and the plaintiffs with whom his coexecutor, Charley Schnack, is associated, is void.

With these main contentions as a text, the argument for appellant proceeds.  He first refers briefly to several propositions of law which are not disputed.  Of course the executor has temporarily a qualified title to the personal property of a testator (Gen. Stat. 1915, § 4554), and if necessary for the proper discharge of his executorship, he may cause the real estate also to be subjected to his control and disposition.  (Gen. Stat. 1915, § 4598 *et seq.; Bank v. Haid,* 97 Kan. 297, 155 Pac. 38.)  Sometimes the executor is authorized by the will of the testator to sell real estate without the sanction of the probate court (*Bank v. Grisham,* 105 Kan. 460, 185 Pac. 54).  Here, however, the will itself specifically outlined the powers and duties of the executors.  They were to pay the debts and funeral expenses of the deceased, pay the legacies bestowed by the will, provide a permanent fund to care for the family burial lot, and sell whatever real estate was necessary, if any,

to pay the legacies provided by the will. Such are the powers and duties of the executors. Aside from these matters, the questions of law and fact involved in the action between the plaintiffs and the city of Larned do not affect the proper discharge of the duties imposed on the executors, and the appellant has no concern therewith.

Perhaps this opinion should close at this point; but the briefs of both parties indicate that the other points urged by appellant should be settled, so we will dispose of them.

We cannot agree with appellant's contention that the city of Larned has no title to the property bequeathed by the residuary clause of Schnack's will. But for the assault made upon it by plaintiffs, the city's title is complete. If the city does not hold the title, where is it? Certainly not in the executors. They have naught to do with the residuary estate. When the executors have paid the debts and bequests and created the small permanent cemetery fund, their duties will be *functus officio*— unless a trusteeship in perpetuity in them and their successors is created to manage the small fund to be provided to care for the burial lot, but we cannot determine that matter now. While the residuary clause does not in exact words confer title on the city, yet the entire income of the residuary property is devised in perpetuity to the city. In legal effect a gift or devise of the total income of property without limitation as to time operates as a grant of the entire estate. *Sicut umbra sequitur corpus.* This has been the law for centuries. Lord Coke said:

"But if a man seised of lands in fee by his deed [or will] granteth to another the profit of those lands, and to have and to hold to him and his heirs, . . . the whole land itselfe doth passe; for what is the land but the profits thereof; for thereby vesture, herbage, trees, mines, and all whatsoever parcell of that land doth passe." (1 Coke on Littleton, L. 1, C. 1, § 1 [4 b.])

"But there is no construction of words older or better settled than that a grant or devise of the profits of land passes the land itself." (*Sharswood, J.*, in *Drusadow v. Wilde*, 63 Pa. St. 170, 172.)

(Note, 9 Ann. Cas. 247, 248.)

"The devise of the rents or income of an estate is held to pass the fee in the same manner as a devise of the estate itself. The same is true of a gift of the proceeds of a fund, without limit as to time." (2 Alexander's Commentaries on Wills, § 920.)

Schnack v. City of Larned.

(See, also, *Gulick's Executors v. Gulick,* 25 N. J. Eq. 324; *Earl v. Rowe,* 35 Maine 414; *Greene v. Wilbur,* 15 R. I. 251; *Johnson v. Johnson,* 92 Tenn. 559.)

We attach no particular significance to the words "Park Commissioner" in the residuary clause of the will. The city may not have an officer of that particular title; and, if it has, the income is not devised to him and his successors in office; he is merely the servant of the city whom the testator suggested as a suitable functionary to manage the city park provided for by his bounty. A city can only act through its officers, agents, and servants; and whichever of these is directed by the city to manage the park will be a proper "park commissioner" to satisfy the will.

The court holds that, aside from any possible infirmity which may inhere in the residuary clause of Schnack's will as charged in plaintiff's original petition, the property thereby devised is vested in the city absolutely, with merely a limitation on the use to which the property is to be devoted—the acquisition and maintenance of a public park in or near the city of Larned. (*Delaney v. City of Salina,* 34 Kan. 532, syl. ¶ 4, 9 Pac. 271; *Curtis v. Board of Education,* 43 Kan. 138, 143, 23 Pac. 98.)

Appellant next contends that the compromise itself is void, (1) because one of the coheirs, Charley Schnack, who is also named as an executor, joined with the plaintiffs as a participant in the compromise, and (2) that the city has no power to compromise or surrender any of its rights under the will.

As there is no issue of fraud or bad faith before us—for the case is only here on demurrer to the supplemental petition—the fact that Charley Schnack participated as an interested party in the compromise will not affect its validity. As we have seen, the executors have no official concern in the residuary estate; that estate will not even come to maturity until the executors have discharged all their duties which can affect it. This record is silent as to whether Charley Schnack has qualified and assumed the duties of his executorship. At all events, he owes no duty as executor to the city of Larned, nor any duty towards this residuary estate, so the rule invoked by appellant that an executor cannot purchase the estate intrusted to him does not apply, and the restrictions imposed upon executors

by section 4614 of the General Statutes of 1915 are irrelevant here.

Can there be any doubt about the power of the city of Larned to compromise and settle this lawsuit? Appellant argues quite forcibly that it has not. He cites *Morris v. Boyd,* 110 Ark. 468, to fortify his point. This case is reported in 39 Ann. Cas. 1004; and in the same volume, at page 999 *et seq.,* is an exhaustive note with a wealth of citations which seem to be at variance with this Arkansas decision. This court has very frequently declared that compromises, amicable agreements, family settlements, and the like, are not only lawful but commendable, and are to be encouraged. Lately this court said, through its chief justice:

"The law favors the compromise and settlement of disputes, and when parties in good faith enter into an agreement based on good consideration neither is permitted afterward to deny it. (*Finley v. Funk,* 35 Kan. 668, 12 Pac. 15; *Minor v. Fike,* 77 Kan. 806, 93 Pac. 264; *Kiler v. Wohletz,* 79 Kan. 716, 101 Pac. 474.)" (*Lewis v. Kimball,* 103 Kan. 173, 175, 173 Pac. 270.)

Is there some qualification on this general rule where the matters involved are the subject of testamentary disposition? In 12 Corpus Juris, at page 322, it is said:

"Compromises having for their object the settlement of family difficulties or controversies are favored at law and in equity if at all reasonable. The termination of such controversies is considered a valid and sufficient consideration for the agreement, and the court will go further to sustain it than it would under ordinary circumstances. Accordingly, it has been laid down as a general rule that a family agreement entered into on the supposition of a right, or of a doubtful right, although it afterward turns out that the right was on the other side, is binding, and the right cannot prevail against the agreement of the parties. The principle has been held to extend not merely to cases in which arrangements are made between members of a family for the preservation of its peace, but to cases in which arrangements are made between them for the preservation of its property. . . . Applications of the foregoing rule have frequently been made in the case of settlements as to the distribution of the property of a decedent, and to agreements not to contest a will, or to withdraw a will contest."

A case in some respects like the one at bar arose in California. One William Land had devised two large legacies to the city of Sacramento for a public park. A relative of the testator threatened to contest the will, thus jeopardizing the

legacies to the city and delaying the acquisition of the park. The city compromised the matter with the relative by agreeing to pay him $15,000 out of one of the legacies if he should withhold his contest, and if no other relative attacked the will. The court, in effect, approved the compromise settlement, and interpreted it according to its terms, although the relative failed because another relative did precipitate a contest. (*In re Land's Estate* [Cal.], 173 Pac. 387. See, also, the note to *Grochowski v. Grochowski* [77 Neb. 506], in 13 L. R. A., n. s., 484.)

The learned trial judge in the present case, in overruling the demurrer, stated the problem exactly:

"The City of Larned has a suit pending in which it stands to win all that is involved or lose all if it has no power to compromise and settle this suit."

And we agree with the conclusion which the trial court reached. He held:

"There seems to be no good reason why a city should not have the same right to settle its litigation that a private corporation or individual has."

The court cannot discern anything more in appellant's brief which would justify further discussion. We do not understand that the $25,000 and the real estate which the city is to receive in lieu of the disputed residuary estate are to be perverted from the public purpose which the testator had in mind, at least the supplemental petition does not so import; and the suggestion that the state's law officer, the county attorney or attorney-general, should be a party to this proceeding is without merit. They cannot be brought into this case if they choose to stay out. Either of these officials has the same concern with the city of Larned's proposed disposition of this residuary estate as they would have with a disposition of the city hall, the city jail, the public library, or the waterworks. And they have no greater concern herewith. If they think the city proposes to transcend its powers, all the state's prerogative writs are ready at their invocation, whenever they choose to invoke them, now or hereafter, and none the less because of lapse of time. *Nullum tempus occurrit reipublicæ.*

The demurrer was properly overruled, and the trial court

is at liberty to proceed at its discretion to determine the propriety of the compromise as it may be advised.

Affirmed.